**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

TONYA H.,[1]

      Plaintiff,

        v.

FRANK BISIGNANO, COMMISSIONER
OF SOCIAL SECURITY, [2]

      Defendant.

CASE NO. 3:25-cv-00137-SJF

**OPINION and ORDER**

Plaintiff Tonya H. ("Ms. H") seeks judicial review of the Social Security

Commissioner's decision denying Ms. H's application for Supplemental Social Security

Income ("SSI") under Title XVI of the Social Security Act (the "Act"). This Court may

enter a ruling in this matter based on the parties' consent under 28 U.S.C. § 636(b)(1)(B)

and 42 U.S.C. §405(g). [DE 13]. For the reasons discussed below, the Court reverses and

remands the decision of the Commissioner of the Social Security Administration

("SSA").

I.     **OVERVIEW OF THE CASE**

Ms. H applied for supplemental security income on April 16, 2022, alleging

disability beginning October 15, 2015. (Administrative Record[3] 10, hereinafter "AR").

---

[1]  To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

[3] Administrative record page numbers are delineated in the bottom right corner of the page in the Administrative Record document filed at docket entry 10.

The claim was denied initially on November 2, 2022, and again upon reconsideration on February 28, 2023.  Ms. H then filed a written request for a hearing, which was received on March 17, 2023. The Administrative Law Judge ("ALJ") conducted a telephone hearing with Ms. H on October 12, 2023. Also appearing at the telephonic hearing were Marie Barhydt, an impartial vocational expert, and attorney Randal S. Forbes, Ms. H's representative. (AR 10). The ALJ issued an unfavorable decision January 16, 2024. (AR 10-19). The Appeals Council then denied Ms. H's request for review on December 6, 2024, (AR 1-3), making the ALJ's the final decision of the Commissioner. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. H filed suit in this Court on February 10, 2025. This Court has jurisdiction to review the claim under 42 U.S.C. § 405(g).

## II.      Applicable Standards

### A.      Disability Standard

To qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity [('SGA')] by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations regarding: (1) whether the claimant is engaged

in SGA; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; Before considering step four, the claimant's residual functional capacity must be determined (20 C.F.R. 404.1520(e) and 416.920(e)) An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the ALJ must consider all the claimant's impairments, including impairments that are not severe (20 C.F.R. 404.1520(e), 404.1545, 416.920€, and 416.945; SSR 96-8p). (4) whether the claimant can perform her past relevant work based on her Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant can perform other work. 20 C.F.R. §§ 4041520; 416.920.[4] The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

### B.      Standard of Review

The Court has authority to review a disability decision by the Commissioner under 42 U.S.C. § 405(g). However, this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573

---

[4] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 416 unless explicit distinction between the DIB and SSI regulations is necessary.

F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of disability, however, the ALJ must

confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(citing *Indoranto v. Barnhart, 374 F.3d 470, 474 (7th Cir. 2004)*). If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## III.    DISCUSSION

### A.    Summary of ALJ's Decision Denying Benefits

Ms. H's telephone hearing before the ALJ took place on October 12, 2023. (AR 1). Ms. H appeared along with an attorney. On January 31, 2024, the ALJ issued a written decision denying Ms. H's application for SSI, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 416.971 et seq. (AR 12-19).

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. H has not engaged in substantial gainful activity since April 16, 2022, the date of her application. (20 C.F.R. 416.971 et seq.). (AR 12).

At Step Two, an ALJ's inquiry focuses on whether the claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 416.920(c). The ALJ found that Ms. H has the following severe impairments: major depressive disorder, generalized anxiety disorder; and borderline intellectual functioning. (AR 12).

At Step Three, the ALJ focuses on whether an impairment meets or equals one of the listed impairments. The ALJ concluded that Ms. H does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925 and 416.926). In making this determination, the ALJ considered Listings 12.04, 12.06, and 12.11. (AR 13). Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. H can perform her past relevant work based on her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 416.945. The RFC is the most that an individual can do despite her limitations. 20 C.F.R. § 416.945(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 416.929. Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 416.967.

The ALJ determined that Ms. H retained the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: ["Ms. H.] is limited to simple, routine, and repetitive tasks. She can make judgments commensurate with such work and cope with the changes of a routine work setting[.]" (AR 15-16)

The ALJ then determined at Step Four that Ms. H can perform her past relevant work as a cleaner (DOT #323.687-014, light, unskilled, SVP 2). (AR 18). The ALJ thus

concluded that work as a cleaner does not require the performance of work-related activities precluded by Ms. H's residual functional capacity (20 C.F.R. § 416.965).

Finding that Ms. H can perform her past relevant work with her RFC, the ALJ concluded that Ms. H has not been under a disability, as defined by the Act, since April 16, 2022, the date the application was filed (20 C.F.R. § 416.920(f)). (AR 19).

**B.     Issues for Review**

Ms. H raises three issues on judicial review. First, Ms. H contends that the ALJ played doctor by improperly discounting the consultative psychologist's opinions regarding Ms. H's mental limitations. Next, Ms. H contends that the ALJ failed to include all supported mental limitations in the RFC assessment. Finally, Ms. H alleges that the ALJ failed to consider her obesity in the decision.

In response, the Commissioner contends that Ms. H has failed to demonstrate that she is disabled, and that substantial evidence supports the ALJ's decision. The Commissioner also directly responds to each of Ms. H's arguments, contending that they have no merit and that the Court should affirm the ALJ's decision.

For the reasons explained below, the ALJ failed to build an accurate and logical bridge between the evidence and his conclusion that the consultative examiner's opinion was not persuasive. Accordingly, remand on the first issue raised by Ms. H is appropriate.

**C.     The ALJ's Evaluation of the Consultative Examiner's Opinion**

As stated, Ms. H first challenges the ALJ's evaluation of the opinion rendered by the agency consultative psychologist, Dr. Frank Choate, Psy.D., HSPP. Dr. Choate

conducted a consultative examination of Ms. H on October 25, 2022. (AR 308). Dr.

Choate's examination began with a discussion of Ms. H's background and an overview

of Ms. H's reported daily activities. (AR 308-309). Dr. Choate next asked Ms. H a series

of questions to interpret proverbs and metaphors, as well questions to ascertain

judgment and insight. (AR 310). The examination report also included observations of

Ms. H's mental status and behavior, results from testing that was administered, and a

medical source statement.

Dr. Choate commented that Ms. H "interacted appropriately at all times" and

that she was "cooperative" when he asked mental status questions. (AR 310). Dr.

Choate's mental status and behavior observations were as follows:

> [Ms. H] presented as a 35-year-old female. She was appropriately dressed for age and season. Her personal functioning as far as dressing, grooming, and bathing was fair. She knew who she was, where she was, and was able to state the reason for our meeting today. She was attentive to the tasks requested of her and seemed to put forth a good effort. She did not show any evidence of a thought disorder and reported no related symptoms. Her mental trend and thought content were logical, but noticeably slowed. She denied any current homicidal or suicidal ideation.
>
> Her affect was flat during the assessment process, and her mood was appropriate.
>
> Her speech was logical and coherent. She tended to be verbose. Her eye contact was fair. Her concentration, persistence and pacing during the interview were noticeably limited. Her immediate, recent and remote memory functioning was appropriate. Her insight into her behavior and the consequences of such behavior was fair to limited She was a fairly good historian. Her attempts at the tasks appear to represent an accurate appraisal of her functioning.
>
> She recalled three of three words after a 90-second day. She completed Serial 7's and had to use her fingers.

(AR 310). Dr. Choate also administered the Wechsler Adult Intelligence Scale-IV (WAIS-IV) during the consultative examination. Dr. Choate's report explains that:

> The Wechsler Intelligence Scales are the most widely used set of instruments designed to measure intelligence for both adults and children. The WAIS-IV (2008) is the latest in the series of Adult IQ tests. The WAIS-IV provides a Full-Scale IQ score as well as Verbal Comprehension Index (VCI) and a Perceptual Reasoning Index (PRI). These two scales (VCI-PRI) are now used where Verbal IQ and Performance IQ were previously used. The Full-Scale IQ is usually considered the most valid measure of overall cognitive ability. The Full-Scale IQ can be considered the degree to which one has developed the ability to function in an effective and adaptive manner.
>
> Also included are Index scores for Working Memory (WMI) and Processing Speed (PSI). All WAIS-IV scores occur on a scale with a mean of 100 and a standard deviation of 15.

(AR 310-11). Dr. Choate then provided a summary of Ms. H's scores on the WAIS-IV:

**Composite Scores Summary:**

| Scale | Composite Score | | Percentile Rank | 95% Confidence Interval | Qualitative Description |
|---|---|---|---|---|---|
| Verbal Comprehension | VCI | 95 | 37 | 90-101 | Average |
| Perceptual Reasoning | PRI | 96 | 39 | 90-102 | Average |
| Working Memory | WMI | 74 | 4 | 69-82 | Borderline |
| Processing Speed | PSI | 71 | 3 | 66-82 | Borderline |
| Full Scale | FSIQ | 82 | 12 | 78-86 | Low Average |

(AR 311). Dr. Choate then explained that Ms. H's "Full-Scale IQ on the WAIS-IV places her within the Low Average range of intellectual functioning. Her Full-Scale IQ of 82 is surpassed by 88% of individuals her age." (AR 311). Dr. Choate also explained that "[PSI] helps to measure the speed of mental and graphomotor (writing) processing. Handwriting is a complex perceptual-motor skill and can be used to help determine the person's ability to do other physical tasks, like work. [Ms. H's] PSI is 71 and places her

9

within the Borderline range." (AR 311). In his summary, Dr. Choate also stated that, if

Ms. H received benefits, "she would not be able to manage them on her own." (*Id.*).

Dr. Choate concluded the examination by providing a Medical Source Statement

and listing diagnoses, stating that

> Based on [Ms. H]'s responses to the questions, and [his] behavioral observations, it appears [Ms. H] will have substantial of (sic) difficulty with understanding, remembering, and carrying out both complex and one-two step instructions. She will have quite a bit of difficulty with maintaining attention and concentration. She will have quite a bit of difficulty with responding to supervisors and coworkers in a typical workplace setting. She will have substantial difficulty with coping with typical work pressures.

(AR 311). Dr. Choate's diagnoses were borderline intellectual functioning, panic

disorder, and major depressive disorder (moderate, recurrent). (AR 312).

The ALJ evaluated Dr. Choate's opinion using the regulatory framework for

claims filed after March 27, 2017, such as Ms. H's claim. Under the applicable

regulations, an ALJ "does not give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative medical finding(s),

including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). The

regulations instead require an ALJ to explain "how persuasive [he] find[s] all of the

medical opinions and all of the prior administrative findings in [a claimant's] case

record." 20 C.F.R. § 416.920c(b).  Persuasiveness of a medical opinion is based upon

several factors: supportability; consistency; relationship with the claimant, including the

length of the treatment relationship, frequency of examination, purpose of the treatment

relationship, extent of the treatment relationship, and examining relationship; and

specialization. 20 C.F.R. § 416.920(c)(1)-(5).

The most important factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion," while "consistency assesses how a medical opinion squares with other evidence in the record." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (internal citation omitted). Accordingly, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinion(s) . . . will be." *Id* § 416.920c(c)(1). Likewise, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* Consistent with general legal standards for reviewing social security cases, an ALJ need only "minimally articulate his reasoning for how he assessed a medical opinion, [but] he must still consider the regulatory factors and build a 'logical bridge' from the evidence to his conclusion." *Taylor v. Kijakazi*, No. 2:22-cv-32-PPS-JPK, 2023 WL 334601, at *3 (N.D. Ind. Jan. 20, 2023) (internal citation omitted).

The ALJ acknowledged Dr. Choate's findings that Ms. H would have substantial difficulty with understanding, remembering, and carrying out both complex and one-two step instructions; that she would have quite a bit of difficulty maintaining attention concentration and responding to coworkers in a typical workplace setting; and that she would have substantial difficulty coping with typical work pressures. In evaluating Dr. Choate's opinion, however, the ALJ found it to be "unpersuasive." (AR 18). As to

supportability, the ALJ explained that Dr. Choate's opinion is inconsistent with his own objective findings—noting that Dr. Choate's mental status examination showed that Ms. H was "attentive to the tasks requested," that she showed logical mental trends and thought content, and demonstrated intact immediate, recent, and remote memory. (AR 18). The ALJ explained that because these findings are inconsistent with the limitations described in the mental status examination, it "suggest[s] that his opinions are based not upon objective medical findings but instead upon the claimant's subjective complaints." (AR 18). The ALJ discussed consistency next, stating that the limitations opined by Dr. Choate were not consistent with the overall record, which included "unremarkable findings on mental status examination, as well the claimant's function report, in which she describes no problem getting along with authority figures and says she spends time with others." (AR 18, citing Exhibits 4E at 6-7; 1F at 1; and 13F at 2, 23, 27, 38, 44). The ALJ explained that he considered other factors based on Ms. H's testimony, acknowledging that Ms. H stated that "she cannot handle the stress of taking care of her children, and her home, and her husband combined with work." (*Id.*). But the ALJ then stated that "[y]et, she indicates no counseling for two years, she has not checked into any possibly available phone/video counseling, she is unaware of the last time she had [a] prescription for such conditions, she is on no ongoing prescription except for an inhaler, she gets along with others, and she does most of the work around the house." (*Id.*).

"Rejecting the opinion of an agency's doctor that supports a disability finding is 'unusual' and 'can be expected to cause a reviewing court to take notice and await a

good explanation' even in this post-treating-physician-rule era." *Laura G. v. O'Malley*, No. 23-cv-1651, 2024 WL 4226273, at *3 (N.D. Ill. Sept. 18, 2024) (citing *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020)). As explained below, the Court cannot find that the ALJ provided a good explanation to reject Dr. Choate's medical opinion here.

Ms. H challenges the ALJ's evaluation, and ultimate rejection, of Dr. Choate's opinion, first contending that the ALJ impermissibly dismissed Dr. Choate's opinion based on a "mistaken belief" that the findings were based on Ms. H's subjective complaints. [DE 16 at 8]. The ALJ did indeed suggest that Dr. Choate's findings were "based not upon objective medical findings but instead upon the claimant's subjective complaints" but the ALJ also explained that there was an inconsistency between his opinion and the objective medical findings. (AR 18). Still, as Ms. H contends, Dr. Choate directly states in his report that his medical source statement was based on Ms. H's responses and Dr. Choate's own behavioral observationss. (AR. 311). Thus, the ALJ's statement that he believed that Dr. Choate's opinion was formed otherwise appears to ignore this portion of the report.[5]

The ALJ's supportability conclusion also appears to be formed on an incomplete discussion of the relevant evidence. In finding that Dr. Choate's opinion was not "based upon objective medical findings," the ALJ discussed certain medical findings from Dr. Choate's examination, including his findings that Ms. H was attentive, showed logical

---

[5] Even putting this aside, however, as Ms. H alleges, "psychiatric assessments normally are based primarily on what the patient tells the psychiatrist[.]" *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). Indeed, "[m]ental-health assessments normally are based on what the patient says, but only after the doctor assesses those complaints through the objective lens of her professional expertise." *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019).

mental trends and thought content, and demonstrated intact immediate, recent, and remote memory. (AR 18). But Ms. H also contends that the ALJ failed to adequately consider the WAIS-IV scores from Dr. Choate's examination in the decision. Indeed, though the ALJ found that Dr. Choate's opinion was not based on objective evidence from the examination, the ALJ fails to acknowledge any of the findings from the WAIS-IV test administered by Dr. Choate, which is objective evidence. *See Pullen v. Colvin*, No. 3:14CV1967, 2015 WL 5125077, at *5 (N.D. Ind. Aug. 31, 2015)(citing 20 C.F.R. § 404.1529(c)(2); *see also Eula M. v. Berryhill*, No. 17 C 6669, 2019 WL 2173790, at *2 (N.D. Ill. May 20, 2019)(describing the WAIS-IV as an objective test).

Indeed, Dr. Choate says in his report that the WAIS-IV is "the most widely used set of instruments designed to measure intelligence for both adults and children . . . The WAIS-IV provides a Full-Scale IQ score as well as a Verbal Comprehension Index (VCI) and Perceptual Reasoning Index (PRI)." (AR 310). Dr. Choate also explained that "included are Index scores for Working Memory (WMI) and Processing Speed (PSI)." (AR 311). Ms. H's WAIS-IV Scores for Working Memory and Process Speed were both listed as "borderline" and her full scare IQ was listed as "low average." (AR 311). And while an ALJ need not discuss every piece of evidence in the record, *see Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003), the ALJ must still "confront the evidence that does not support his conclusion and support why that evidence was rejected." *Moore*, 743 F.3d at 1123. And here, the ALJ did not assess whether Dr. Choate's opinion was supported by the findings from the test, particularly, the two subset scores that were "borderline" and the Full-Scale IQ of "low average." Thus, the Court can only find that

the ALJ's rationale undermining the supportability of Dr. Choate's opinion due to a perceived inconsistency between Dr. Choate's opinion and objective findings during the examination—while failing to address the objective WAIS-IV results from the examination—has a logical gap. Without more, the Court cannot find substantial evidence supports the ALJ's analysis of the supportability of Dr. Choate's opinion. *See also Jordan H. v. Bisignano*, No. 24CV7051, 2025 WL 2604955, at *3 (N.D. Ill. Sept. 9, 2025)(remanding in part based on an ALJ's failure to assess whether the agency consultative examiner's opinion was supported by findings of WAIS-IV testing administered during exam).

In response, the Commissioner responds by contending that the ALJ discussed the WAIS-IV scores when addressing the paragraph B criteria, and that the Court should review the ALJ's decision as a whole.[6] The Commissioner explains, that when considering the ALJ's discussion from that section, "[i]t is apparent from that paragraph that the ALJ did not view the two subset scores at issue as significantly weakening other substantial evidence in the record indicating that [Ms. H] was not as limited as claimed." [DE 20 at 6]. In the section referenced by the Commissioner, the ALJ states "[d]espite scoring within the borderline range of intellectual functioning on two subsets of the WAIS-IV test . . . [Ms. H]'s full-scale IQ score of 82 was within in the low average range and her subsections related to verbal comprehension and perceptual reasoning

---

[6] When a claimant has a medically determinable mental impairment, the ALJ rates the claimant's degree of functional limitation in four broad areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). These four broad functional areas of mental functioning are known as the "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq.

were both within the average range." (AR 13). But even there, the ALJ fails to explain why the average range scores outweigh—or failed to significantly weaken—the borderline scores. Thus, the Court cannot find that the ALJ's discussion is as "apparent" as the Commissioner maintains or that it otherwise explains why the ALJ did not consider this to be "objective evidence" that supported Dr. Choate's opinion.

The ALJ's analysis finding Dr. Choate's opinion inconsistent with the overall medical evidence also contains material gaps in logic. The ALJ explains that Dr. Choate's findings are "inconsistent with the overall evidence" and references Ms. H's Function Report. The ALJ states that, in her function report, Ms. H described no problems getting along with authority and that she "says she spends time with others." (AR 18, citing Ms. H's Function Report at Exhibit 4E/6-7).

But in her function report, Ms. H's response to the question "Do you spend time with others?" is as follows:

19. **SOCIAL ACTIVITIES**

a. Do you spend time with others? *(Check all that apply.)*

☑ In person    ☒ On the phone    ☒ Email    ☒ Texting    ☑ Mail

☒ Video Chat (for example Skype or Facetime)    ☒ Other *(Explain)* _____

b. Describe the kinds of things you do with others. Talk, hang out, eat together. though since covid broke out I have had very little to no friends spend time with me. Basically it's just Jesus & my husband are my friends.

(AR 221). Ms. H later reiterates that "since COVID, [she] do[esn't] have much interaction with people. With no car and no one willing to try to do activities with [her]." (*Id.*) At the hearing, Ms. H reiterated that

16

A    Sometimes, yes.  We'll meet up -- well, I shouldn't say meet up with other people.  It's more of like the spots that we're at or if -- or when we're out and about, you know, people end up talking to us and everything.  I usually respond back.

Q    Okay.  And so do you ever go out with them or do things with other people in this RV life?

A    Haven't had the invitations just yet.

Q    Okay.  All right.  Okay.  Do you -- do these groups when you happen to come across them, do they do things together?

A    I know -- from what I've seen --

Q    And --

A    -- on --

Q    -- if so, do you --

A    Sorry.

Q    -- join in?  No, you're fine.  If so, do you join in, or no?

A    I haven't had the opportunity to do so just yet, sir.  I --

(AR 51). Without any further explanation from the ALJ, his determination that Ms. H "says she spends time with others," appears to be contrary to both the evidence cited and other evidence in the record. (AR 18).

The ALJ also cites to treatment records from Parkview to state that Dr. Choate's opinion is inconsistent with the overall evidence in the record. (AR 18, citing Exhibit 1F/1, 12). But evidence referenced by the ALJ does not discuss Ms. H's abilities to get along with authority or whether she spends time with others, as Exhibit 1F/1 (AR 274)

17

is a treatment note for an appointment Ms. H missed a menstrual period, and Exhibit

1F/12 is a note from an annual physical examination. (AR 285). Additional treatment

records cited by the ALJ (Exhibit 13F/2, 23, 27, 38, 344) likewise fail to support this

determination (albeit without any further explanation). These records, which are

treatment notes from an annual physical examination on March 24, 2023 (13F/2),

follow-up appointments for asthma treatment on October 22, 2019 (13F/23) and on July

22, 2019 (13F/27), an acute visit for pain and itching on December 14, 2018 (13F/38) and

a follow-up visit for constipation and abdominal pain on October 10, 1017 (13F/44),

describe Ms. H as being in "in no acute distress" and presenting at the appointment

with "normal mood and affect."

By only broadly citing to this evidence, the ALJ fails to adequately explain why

these findings outweigh findings by Dr. Choate. Indeed, courts have observed that a

finding that an individual presented "in no acute distress" cannot discount testimony

about the severity of symptoms. *See Nowak v. Saul*, No. 20-CV-1088-SCD, 2021 WL

1263753, at *10 (E.D. Wis. Apr. 6, 2021) (collecting cases). "To physicians, 'No Acute

Distress' means that your patient will probably not become unstable in the next 5

minutes." *Wanserski v. Colvin*, No. 1:14-CV-1033-DKL-JMS, 2015 WL 5692521, at *7 (S.D.

Ind. Sept. 28, 2015). Moreover, as Ms. H contends, the cited findings about "normal

mood and affect" are from physical examinations rather than mental health

examinations or treatment notes. *See Kylie A. P. v. Kijakazi*, No. 1:21-CV-046, 2022 WL

1043871, at *5 (N.D. Ind. Apr. 7, 2022), *report and recommendation adopted sub nom.*

*Prilaman v. Kijakazi,* No. 1:21-CV-46, 2022 WL 4354761 (N.D. Ind. Sept. 19, 2022)(finding

an "ALJ's reliance on physical examinations to support mental health symptoms and findings was in error")(citing *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) (noting that there "there is no reason to expect a doctor asked about an eye problem, or back pain, or an infection of the urinary tract to diagnose depression")). In sum, without more, the Court is unable to trace the ALJ's reasoning finding Dr. Choate's findings are "inconsistent with the overall record" based on the citations provided. (AR 18). *See Michael L. v. Saul*, No. 2:20CV238, 2021 WL 1811736, at *11 (N.D. Ind. May 6, 2021) (stating that "the ALJ must build a logical analytical bridge explaining what particular evidence undermined [certain medical] opinions and why.") Accordingly, the Court cannot find that substantial evidence supports the ALJ's evaluation of consistency under the regulations.

"Failure to adequately discuss supportability and consistency requires remand." *Willis v. Acting Comm'r of Soc. Sec.*, No. 3:21-cv-178 JD, 2022 WL 2384031, at *3 (N.D. Ind. July 1, 2022) (citing *Tammy M. v. Saul*, No. 2:20CV285, 2021 WL 2451907, at *7 (N.D. Ind. June 16, 2021)). For the reasons explained above, the ALJ failed to adequately explain the supportability and consistency factors when finding Dr. Choate's opinion unpersuasive. Accordingly, remand is required on this basis.

### D. Ms. H's Other Arguments

As stated, Ms. H has raised three arguments in support of remand. The Court declines to address Ms. H's arguments based on the issues identified with the ALJ's evaluation of Dr. Choate's opinion. The ALJ will have the opportunity to fully discuss and reevaluate Ms. H's other allegations on remand.

**IV.    CONCLUSION**

For these reasons, the Court **REVERSES** and **REMANDS** the Commissioner's

decision for further administrative proceedings.

**SO ORDERED** this 20th day of March 2026.

s/Scott J. Frankel  
Scott J. Frankel  
United States Magistrate Judge
